BOLINGER *v.* BOARD OF DIRECTORS OF RED RIVER LEVEE DISTRICT No. 1.

Opinion delivered February 2, 1920.

LEVEES—CONVEYANCE OF STATE LANDS.—Acts 1905, page 252, section 32, conveying to the Red River Levee District No. 1 all lands of the State lying within the district, except school lands, under certain "restrictions and limitations" *held* an absolute conveyance and not a conveyance upon conditions subsequent.

Appeal from Lafayette Chancery Court; *James M. Barker,* Chancellor; affirmed.

*Allen H. Hamiter* and *T. D. Crawford,* for appellant.

The lands were donated to the levee district upon certain restrictions and limitations, conditions subsequent, which were not performed, and the lands reverted to the grantor. 113 Ark. 32; 91 *Id.* 407. The burden of proof was on appellee. Kirby's Digest, § 3107. There is a statutory presumption in favor of the Land Commissioner's deed. 96 Ark. 447. The burden was on plaintiff to show that it has complied with all the conditions imposed by law and it failed. No bond was executed to the Governor as required by law. 112 Ark. 291; 76 *Id.* 447; 77 *Id.* 244; 95 *Id.* 438. Appellee never complied with the conditions and the title failed and the chancellor erred in confirming the title.

*Henry Moore, Jr.,* for appellee.

The district fully complied with all the conditions and requirements of the act, and the decree is in all things correct. 208 S. W. 402; 21 Wall. 45; 106 U. S. 365; 91 Ark. 409; 113 *Id.* 93, 407; 134 *Id.* 471.

SMITH, J. The Board of Directors of Red River Levee District No. 1 brought this suit against appellant, and alleged the organization of the levee district by Act No. 97 of the Acts of 1905, and that by section 32 of this act all the lands of the State lying within the district, except school lands, had been conveyed to it; that it accepted the title to said lands and has complied with all the requirements of the act and is the owner of all lands that belonged to the State at the time the act was passed, and that the lands here sued for were included among them. That the State acquired its title under the Swamp Land Grant, and thereafter conveyed the lands in suit to C. S. Itner on January 16, 1873, but later the lands forfeited to the State for the non-payment of the taxes due thereon for the years 1896 and 1897, and that on April 4, 1918, appellant procured a deed to said lands from the

State Land Commissioner, the same being conveyed as lands which had forfeited for the non-payment of the taxes due thereon.

The answer admitted that the land was included in the legislative grant to the levee district, but alleged that the grant was not absolute, but was conditional, and that the conditions there imposed constituted conditions subsequent for the non-performance of which the lands had reverted to the State, and had again become subject to sale by the State, and that the deed to him from the State Land Commissioner had effectively conveyed the title.

The decision of this question proves decisive of the case and renders it unnecessary for us to review the testimony upon which the court below found the fact to be that the restrictions and limitations contained in the act had been complied with.

The grant of the land, together with the restrictions and limitations there imposed, are found in section 32 of the act and reads as follows: "Section 32. That, for the purpose of assisting the citizens of the State to build and maintain a levee herein provided for, and in consideration of the general good of the State, all of the lands of this State lying within said levee district, except the sixteenth section school lands not subject to taxation, and all the right or interest the State has or may have within the next six years, by reason of forfeiture for taxes, to any lands within said levee district, except said sixteenth section school lands not subject to taxation, is hereby conveyed to said levee district under the following restrictions and limitations. Said levee district, represented by its board of directors, shall make a descriptive map of said lands, showing the location and character of the same. That said lands shall be graded into first, second and third grades, with reference to their relative elevation and timber, and a description of the land and timber given. The said levee district may sell said lands for the minimum price of five dollars ($5), three dollars ($3), and two dollars ($2) per acre as to grade, or may issue the bonds of said levee district secured by a mort-

gage on said lands or any part thereof, and payable as the board of directors may determine. The treasurer of the levee board of said district, upon receipt of payment of any part or parcel of said lands, shall certify the same to the president of said board, who shall execute a deed in the name of said corporation to the purchaser of said lands, the money arising from such sales or issuance of bonds to be applied solely to the construction and maintenance of the levee of said levee district. That said lands shall be exempt from State and county taxes for ten years, if not sooner sold by said district, and at the expiration of the term of said ten years from passage of this act, all of said lands not previously sold by said district shall be assessed in the name of said district for said State and county taxes. That the levee district shall have the same power to confirm the tax sales to lands in said district in a court of equity as is now conferred upon individuals who purchase lands at tax sales, and the proceedings shall be the same as is provided by law for individuals, providing that the president of said levee board shall make bond to the Governor, payable to the State of Arkansas, in the sum of five thousand dollars ($5,000), conditioned upon the faithful and honest appropriation of the proceeds of the aforesaid lands to the building and maintaining the levee of said district. The president of said levee board shall on the second Tuesday of May in each year make a report to the Governor of this State, showing the lands confirmed to said levee district by the courts of chancery, as provided for in this act, and all other lands hereby conveyed, showing the disposition, if any, made of those lands during the preceding year, the funds realized and where and how expended.''

We think the restrictions and limitations contained in the act are not conditions subsequent, the nonperformance of which would operate to defeat the deed. The act is a grant *in praesenti,* and the title to the land there referred to passed to the levee district, when the act was approved and became a law, and we think it contains no recital evidencing an intent that the land should revert

upon the non-performance of these conditions. If the restrictions and limitations there referred to are conditions subsequent, then each of them is a condition subsequent, and a failure to perform any one of them would be as fatal as a failure to perform all of them. These conditions are too numerous, and some of them so comparatively unimportant, that we can not give this construction to the grant in the absence of any language indicating an intent that the land should revert upon the nonperformance of all, or any, of these restrictions and limitations. If the act were construed otherwise, a single failure to report annually to the Governor would determine the grant, as would a single failure to pay taxes.

The beneficiaries of this act are not the officers of the board who are charged with the performance of the duties there enumerated, but the act was passed "for the purpose of assisting the citizens of the State to build and maintain a levee." The act authorized the issuance of bonds to construct this levee, and the testimony shows that bonds in the sum of $215,000 have been issued and the proceeds of these bonds, together with the revenues collected from local taxation, have been expended in the construction of the levee to the proportionate benefit, no doubt, of the lands in suit as well as all the other lands lying in the district. It was contemplated that these lands would furnish, *pro tanto,* the security upon which the bonded indebtedness of the district would be based, and that the proceeds of the sale of these lands would be applied to the discharge of the burden arising from the construction and maintenance of the levee and, as a matter of grace, and to promote the State's development, these lands were donated. The Legislature prescribed the manner of the disposition of the lands, and no doubt, by an appropriate action, any party in interest might enforce the discharge of the duties there enjoined. But that question is not before us, and it suffices to say that, in our opinion, an absolute title was granted to the levee district, and the limitations and restrictions set out above are not conditions subsequent.

Decree affirmed.